## SAMUEL E. MERWIN AND OTHERS vs. JOHN A. RICHARDSON AND OTHERS.

*H*, being embarrassed, conveyed in 1881 certain real estate to *D* and *R*, who were his creditors, they paying no consideration, and the object being to set the property apart as a guarantee that a certain arrangement which he proposed to make with his creditors should be carried

Merwin *v.* Richardson.

out in good faith, the security being intended for all his creditors then or thereafter existing. The deed was recorded, and the creditors notified of the conveyance and its object. *H* got an extension from most of his creditors and continued his business, paying off most of them and incurring new indebtedness, largely to the same parties, for new goods bought. In 1882 he made an assignment for the benefit of his creditors under the insolvent law. *M & S*, who had become creditors since the deed was made, requested the trustee to institute, proceedings to subject the real estate in question to the payment of all the debts, and, he declining, brought a suit in their own names for the benefit of all the creditors, who were cited in, some of them filing a cross-complaint praying that the prayer of the original complaint might be granted. After the hearing, and before judgment, the trustee and *H*, the debtor, filed separate applications to be admitted as co-plaintiffs, and were so admitted. Held that a judgment was properly rendered vesting the title of the real estate in the trustee for the benefit of all the creditors.

At the time the deed was given *H* wrote letters to several of his creditors enclosing his notes under the proposed extension, and informing them that he had placed his real estate in the hands of trustees to secure the payment of the notes. Held that, as these letters were but a part of the evidence, and the court below had found upon all the evidence that he intended the conveyance as security for all his debts then or thereafter existing, this court could not see that such was not his intention.

If, however, the letters were to be regarded as constituting a contract with the creditors to whom they were sent, giving them a right to the security above other creditors, then it became a decisive consideration against their claim that the letters were not a part of the deed and so did not appear with it on record, and therefore could not affect the rights of the creditors generally, who were represented by the trustee in insolvency.

And it was an answer to the entire claim of the old creditors that the deed of which they claimed the benefit did not disclose its object as security, but was an absolute deed, and therefore of no validity against attaching creditors or against the trustee in insolvency who represented all the creditors.

Under the Practice Act a defendant waives all objection to the capacity or right of the plaintiff to sue, where he does not raise the question by his answer and goes to trial upon the merits of the case.

An objection seasonably made to the capacity of the plaintiff to sue is yet, after judgment, to be taken as an objection to the plaintiff as he stood at the time of the judgment, whatever changes may have been made in the party plaintiff. If the right person is then plaintiff, neither the manner of his becoming such, nor the fact that others are joined with him, will defeat his right to recover.

Parties defendant cannot take advantage of any irregularity by which others are brought into court.

Under the Practice Act all persons having an interest in the subject of the

suit and in obtaining the judgment may be joined as plaintiffs; and new parties may be added and summoned in, and parties misjoined may be dropped by order of the court, at any stage of the cause, as it may deem the interests of justice to require.

In suits where one person incurs expense in rescuing property for the benefit of many, a court of equity has power to direct that the expenses so incurred shall be paid from the common fund.

The same counsel cannot, at the same time and in the same court, represent different parties whose claims are antagonistic ; but where there are several parties asking for the same judgment, there is no objection to their being represented by the same counsel, although some of them are on the record as plaintiffs and some as defendants.

[Argued June 5th—decided July 22d, 1884.]

SUIT to compel the defendants to convey certain real estate, and to account for rents and profits received; brought to the Superior Court, and tried to the court before *Stoddard, J.* The suit was . originally brought by Samuel E. Merwin and Samuel E. Merwin, Jr., co-partners under the name of S. E. Merwin & Son, as creditors of Philip Hugo, an insolvent debtor, and sought to have the property in question conveyed to the trustee of his insolvent estate for the benefit of all his creditors. After the case was in court the several creditors of Hugo were brought in by an order of the court. The court found the following facts :—

Philip Hugo had been for many years a merchant and trader in the city of New Haven. In the years 1873 and 1874 he purchased certain property on the corner of Bradley and Grand streets in New Haven, and in 1876 certain property on Nash street. On June 25th, 1881, he executed a deed of both pieces of property to John A. Richardson and James D. Dewell, both of New Haven. This deed was an ordinary quitclaim, with no condition of any kind. No consideration was paid by Richardson and Dewell. In the spring of 1881 Hugo became financially embarrassed, and unable to continue his business without making some arrangement with his creditors. The real estate above described was mortgaged, the piece on the corner of Bradley and Grand streets for $15,500, and the Nash street

piece for about $1,100. The piece on the corner of Bradley and Grand streets was then worth about $25,000. It is now worth $26,000. The Nash street property was then and is now worth $1,800. So that on June 25th, 1881, the equity of redemption in the two pieces was worth about $10,200. It is now worth about $11,200.

On said June 25th, 1881, Hugo, hoping to be able to continue his business by obtaining time from his creditors to pay them, determined to ask for an extension; and, to the end that he might be able to assure his creditors that his property would be ultimately applied to the payment of his debts, he determined to execute the deed to Richardson and Dewell hereinbefore referred to. He thereupon executed the deed, and left it for record at the town clerk's office, and either personally or by an agent applied to his creditors to obtain such extension, giving some of them a statement of his affairs, and notifying them of the deed to Richardson and Dewell. He also notified Richardson and Dewell of the execution of the deed to them.

Many of the creditors of Hugo granted the extension asked for, some taking notes for three, six and nine months, and others taking shorter notes, and many taking no notes whatever, but all of such creditors either tacitly or expressly agreeing, or leaving Hugo with the understanding, that an extension of time would be granted. Hugo executed the deed and placed it on record for the purpose of satisfying the entire body of his creditors, and with the intent thereby to assure them that the property would be thereby secured to the payment of his debts then and thereafter existing; and in several instances he told his creditors, when he got the extension, that the deed was made for the purpose of assuring his creditors that the property should be secured for the payment of his debts. Among those that he so told were some of the creditors who did business in New York. He also told some of the creditors living elsewhere. To certain of the creditors he wrote letters that are hereinafter given.

Hugo remained in possession of the real estate, taking

Merwin v. Richardson.

the rents and profits, and treating and regarding it as his own individual property, and Richardson and Dewell never took possession nor exercised any act of ownership or control over it.

This condition of affairs continued until January 14th, 1882, when Hugo made an assignment under the statute for the benefit of his creditors, naming said James D. Dewell as trustee in his deed of assignment. Dewell has qualified and been duly confirmed by the court of probate, and is now the trustee in insolvency. Prior to the assignment Hugo had paid many of his debts that existed on June 25th, 1881, either in whole or in part, contracting others in the place of those paid in the ordinary course of business, in most instances the new indebtedness thus contracted being to the same parties as the old indebtedness, and being a continuation of his business indebtedness. There is a large indebtedness to different persons still unpaid which existed June 25th, 1881; also a considerable indebtedness incurred since that date in place of indebtedness then existing, and to the same persons whom he was then owing, and a substantial indebtedness created primarily since June 25th, 1881.

After the assignment in insolvency Richardson claimed and still claims to hold the real estate in trust to pay creditors living in New York in full; and the defendants whose claims existed on the 25th of June, 1881, claim that the equity of redemption should be applied to the payment of their debts in full. The equity of redemption is of considerably greater value than enough to pay the New York creditors in full.

Dewell does not claim to hold the property for the New York creditors, but desires that it should be appropriated to the payment of the general body of the creditors.

Dewell, as trustee in insolvency, neglected, after request made upon him by S. E. Merwin & Son therefor, to institute any proceeding to subject the real estate to the payment of the general debts of Hugo, but desired that they should bring this action. And thereupon they did so in

Merwin *v.* Richardson.

the interest and for the benefit of the general body of creditors.

After the creditors of Hugo had been brought in as parties, that portion of them whose claims existed on the 25th of June, 1881, filed an answer claiming that the property should be applied for their benefit; while those whose claims accrued after that date filed a cross-complaint claiming that the property should be conveyed to the trustee in insolvency for the benefit of all the creditors equally.

After the hearing in the case and before judgment Dewell filed an application to become a party plaintiff. Hugo also filed an application to become a plaintiff. Both applications were allowed by the court, the defendants excepting.

The notes for the terms of three, six, and nine months, given by Hugo to some of his creditors, were all dated June 25th, 1881, and on the same day he wrote the following letters and sent them to the parties to whom they are addressed:

"NEW HAVEN, Conn., June 25th, 1881.

"MR. JOHN KRESS, New York:—I am very sorry that I cannot promptly meet my obligations to you. I have engaged in too much business and would be cramped still worse. My liabilities are in no proportion to my assets. To make it possible to recover myself I have asked indulgence of my creditors, which so far has been agreed to by all. I have besides placed all my real estate in the hands of two honorable men until the notes are paid. Enclosed I hand you over three notes of $400 each, for three, six and nine months. I shall be in a position at all events to take up the notes earlier as I have in view to curtail my business, by which some capital will be given me.

Yours respectfully, PH. HUGO."

"NEW HAVEN, June 25th, 1881.

"MESSRS. AUSTIN, NICHOLS & Co., New York. Gent.— Enclosed please find three notes, $154\frac{87}{100}$ each, for three, six and nine months in settlement of my account. I have transferred all my real estate to secure notes for the settle-

ment in the hands of two trustees, John A. Richardson and James D. Dewell, both of this city. By reducing my business I shall be able to meet all my obligations soon. Please let me know what interest you demand and I will remit.—Very respectfully,                    PH. HUGO."

"NEW HAVEN, June 25th, 1881.

"MESSRS. SAMUEL WILDE'S SONS, New York. Gent.— Enclosed please find three notes, $179\frac{80}{100}$ each, for three, six and nine months. To secure them I transferred all my real estate in the hands of trustees. I am very glad my creditors are satisfied to help me through my present embarrassments, and by reducing business I will be able to meet those notes.—Respectfully yours,       PH. HUGO."

About the same time he wrote similar letters enclosing similar notes to some other of his creditors, and to several of the defendants, but he neither sent nor delivered any letter or writing, other than notes, to his other creditors. The creditors who accepted the notes of three, six and nine months' time, still hold the notes on six and nine months' time, the notes on six months' time being partially paid, and the nine months notes are unpaid.

Neither Dewell nor Hugo have made any demand upon Richardson to reconvey the property except by the present suit, but any demand that might have been made would have been fruitless, for Richardson has at all times claimed and now claims to hold the title adversely to the plaintiffs in this action, and adversely to the trustee, and to the general body of the creditors of Hugo.

Hugo's insolvent estate is still in process of settlement, and the commissioners appointed thereon have not yet rendered their final report of the indebtedness due at the time of his insolvency. It was not proved that any of the plaintiffs' debt was contracted on the faith of the conveyance in question. Their claim accrued wholly after the deed was given.

Upon these facts the counsel for the contesting defendants claimed and asked the court to rule—

1. That the plaintiffs could not maintain this action in

the present state of things; and that the right to bring the suit, if it existed in any one, was in the trustee in insolvency alone.

2. That there had been no such refusal on the part of the trustee to bring suit as would entitle the plaintiffs as creditors to bring this suit.

3. That the conveyance was good and valid as against the plaintiffs and all creditors whose claims accrued subsequently to the making of the conveyance.

4. That the conveyance was good and valid as against the trustee in insolvency, to the extent of the claims sought to be secured thereby.

5. That the only question the court could pass upon was, whether the conveyance was fraudulent, and that it could not determine the specific creditors in whose favor it was made.

6. That if the conveyance was invalid as giving a preference to a part of the creditors of Hugo, advantage could have been taken of this only by proceedings in insolvency within sixty days after the conveyance was made.

7. That the writing and sending of the letters and the enclosed notes to the several creditors of Hugo, was a sufficient compliance with the statute of frauds to make the conveyance a good and valid equitable mortgage in favor of the creditors to whom the letters were written and sent, and that they were entitled to hold the equity in the real estate for the payment of their debts in full.

But the court overruled all of these claims and rendered the following judgment:—

It is adjudged and decreed that the equity of redemption in the real estate described in said deed from said Hugo to said Richardson and Dewell be, and the same is, vested in said James D. Dewell as trustee of the insolvent estate of said Philip Hugo; and it is further ordered and decreed that said John A. Richardson and James D. Dewell forthwith make, execute, and deliver to said James D. Dewell as such trustee in insolvency a good and sufficient deed and conveyance to vest the legal title of said property in said

Dewell as such trustee in insolvency. And it is further ordered that said James D. Dewell, as such trustee in insolvency, pay to the plaintiff in this action, out of the proceeds of the sale or disposition of said real estate, the actual cash outlay of said plaintiff in this action for officer's, witness and court fees, and his counsel fees, allowed in all at the sum of $295, as of the 1st day of February, 1884. No further costs are to be taxed in this action.

The defendant Richardson, and certain of the defendants interested as creditors of Hugo in the application of the real estate to their own claims in preference to those of the general creditors, appealed to this court.

*C. S. Hamilton,* for the appellants.

*J. Twiss* and *S. H. Wagner,* for the appellees.

CARPENTER, J. Philip Hugo was a merchant in New Haven. On the 25th of June, 1881, being pecuniarily embarrassed, he conveyed certain real estate, valued at about $10,000, to James D. Dewell and John A. Richardson by a quit claim deed in the ordinary form. No consideration moved from the grantees, but so far as they were concerned the deed was a voluntary one. The object however was not to place the property beyond the reach of creditors, but to set it apart as a guarantee that certain arrangements which he proposed to make with his creditors for an extension of the time of payment should be performed on his part. He caused the deed to be recorded, and notified Dewell and Richardson, also his creditors, of the deed and its object. From most of his creditors he obtained an extension of time and continued his business. He remained in possession of the real estate so conveyed, taking to himself the rents and profits. Some of the indebtedness existing when the deed was given was paid and other debts contracted with the same creditors in lieu thereof. This was done in the ordinary course of business, making payments on account, or notes, and purchasing on credit other goods.

On the 14th of January, 1882, Hugo made an assignment, under the insolvent laws of this state, of all his property for the benefit of his creditors, naming Dewell in his deed of assignment as his trustee. Dewell was duly confirmed as trustee and is proceeding in the settlement of the estate. Of the indebtedness existing June 25th, 1881, when the deed was given, a large portion is still outstanding. In addition to the new indebtedness arising in the usual course of business, as above stated, there is a considerable amount of indebtedness created primarily since June 25th, 1881. Dewell as trustee caused the real estate thus conveyed to be inventoried, and claims that all the creditors are entitled to the benefit of it; while Richardson claims to hold it for the exclusive benefit of certain New York creditors. The trustee declined, after request made upon him by Merwin & Son, to institute any proceeding to subject the real estate to the payment of all the debts of Hugo, and therefore this action was brought for the benefit of all the creditors.

Dewell caused all the creditors to be cited in as parties. A portion of the creditors filed a cross-complaint, praying, in substance, that the prayer of the complaint might be granted. After the hearing, and before judgment, Dewell and Hugo filed separate applications to be admitted co-plaintiffs, and they were so admitted.

The court rendered judgment for the plaintiffs, vesting the title to the real estate in question in the trustee for the benefit of all the creditors, and required Richardson and Dewell to convey their interest therein to Dewell as trustee. Certain creditors and Richardson appealed.

The reasons of appeal are sixteen in number. They really however embrace but five points. It is to be regretted that counsel find it necessary to state the errors of which they complain in so many different ways. A point once stated in clear and concise terms is not strengthened by repeating it in different forms of expression.

The first error assigned is that the plaintiffs cannot maintain this suit.

The first section of the Practice Act provides that "if

the defendant desires to plead to the jurisdiction, or in abatement, or both, he shall take such exception in one plea substantially in the following form. * * * All defenses other than those to the jurisdiction or in abatement shall be made by an answer or demurrer."

There was no plea to the jurisdiction or in abatement. Neither was there a demurrer. There is an answer, but it does not question the ability of the plaintiffs to sue, so that the pleadings raise no such question as this. As we understand the spirit and policy of the Practice Act, it requires that all such questions shall be raised by the pleadings. *Trowbridge* v. *True*, ante, p. 190. We think that the defendants by their answer, and by going to trial on the merits, waived any question as to the capacity or right of the plaintiffs to sue.

Again. The fourteenth section of the Practice Act pro vides that an executor, administrator, or trustee of an express trust, may sue or be sued without joining the persons represented by him and beneficially interested in the suit. This the trustee declined to do. Thereupon S. E. Merwin & Son brought the suit alone against Dewell and Richardson. Under the thirteenth section of the Practice Act perhaps the court might have authorized the plaintiffs to prosecute in behalf of themselves and the other creditors. But that course was not taken. All the creditors were made parties, some of whom united with the plaintiffs, asking for the same judgment which they claimed, and others opposed it. After the hearing and before judgment Dewell the trustee became a co-plaintiff, and he claimed the same judgment. So that when the judgment was rendered the party who by the fourteenth section of the Practice Act might have brought the suit alone, was in fact a plaintiff demanding a judgment in his favor for the purposes of the trust. Now we must regard this objection as an objection to the parties as they stood at the time judgment was rendered. It was in effect then a claim that Dewell as trustee could not maintain this action and could not have a judgment in his favor. We think he could. Under the Practice

Act he was a plaintiff; and neither the manner of his becoming such, nor the fact that others were joined with him, will defeat his right to recover.

It was urged that there was no such refusal by the trustee as to justify this suit. The views we have already expressed are a sufficient answer to this objection. When the judgment was rendered, if not before, the proper person who might sue and whose duty it was to. sue, was before the court as a plaintiff, asking for the proper judgment.

At the January term of the court in 1884, Coburn & Co. and five other parties appeared in court as defendants, and, claiming to be creditors, filed a cross-complaint, in which they prayed that Richardson and Dewell might be required to convey the premises, with the rents and profits derived therefrom, to the trustee of Hugo, or that they sell the property and deliver the proceeds, together with the rents and profits, to the trustee. This cross-complaint was signed and filed by Julius Twiss, Esq., as counsel for said creditors. He was also counsel for the plaintiffs. On that ground and for that reason alone Richardson and some of the creditors filed a motion to erase the cross-complaint. The court declined to do so, and this is given as one of the reasons of appeal.

We agree that the same counsel at the same time and in the same case cannot represent different parties whose claims are antagonistic; but where, as in this case, there are several parties asking for the same judgment, their interests do not conflict, and we see no objection to the same counsel acting for all such parties, notwithstanding the accidental circumstance that some of them are classed as plaintiffs and others as defendants.

The objection which the appellants now make, and apparently for the first time, that the cross-complaint should be erased because the parties filing it were not legally summoned into court, cannot prevail, for two reasons:—1st, the appellants limited the objection in their written motion to the reason above considered, and we think they should now be confined to that; and 2d, the appellants cannot

take exception to any irregularity in the process by which others are brought into court.

Another error assigned is that the court improperly allowed Dewell and Hugo to become plaintiffs. The Practice Act is liberal in respect to parties. By the eleventh section all persons having an interest in the subject of the action, and in obtaining the judgment demanded, may be joined as plaintiffs. The sixteenth section provides that no action shall be defeated by the non-joinder or misjoinder of parties. New parties may be added and summoned in, and parties misjoined may be dropped, by order of the court, at any stage of the cause, as it may deem the interests of justice to require. The seventeenth section provides that when any action has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it has been so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff. These provisions are broad enough to justify the action of the court. The relief as prayed for by the original plaintiffs and by Dewell and Hugo, is substantially identical. The interests of the last two are in no sense adverse to Merwin & Son. There is no fact or circumstance in the case which indicates that the appellants were legally prejudiced by the admission of these persons as plaintiffs.

Another question is made concerning the nature and effect of the conveyance to Dewell and Richardson. The appellants, assuming that it was designed to secure their respective claims alone, and was not intended as security for all the creditors, insist that the deed was not fraudulent in fact, and that it was not avoided by the insolvency proceedings because such proceedings were not instituted within sixty days after the deed was given; and therefore that the deed cannot be set aside.

But the appellants are wrong in their conception of the real question involved in the case, and they are wrong in their assumption. The question is not whether a fraudu-

lent conveyance shall be set aside, but whether a conveyance made in good faith shall operate as the parties intended it should. It is expressly found that "Hugo executed the deed and placed it on record for the purpose of satisfying the entire body of his creditors that said property would be thereby secured to the payment of his debts *then and thereafter existing.*" If it is to have the effect contended for by the appellants it defeats the intention of the grantor, and, if it does not operate as a fraud, it operates to give certain creditors a preference, which is contrary to the policy of our insolvent laws; while the view contended for by the plaintiffs, and which was adopted by the court below, gives effect to the intention of the grantor, and results in an equal distribution among creditors. Equality is equity.

The appellants are equally wrong in their assumption that the deed was intended as a mortgage to them exclusively. The deed is in the ordinary form. Nothing on its face indicates the purpose for which it was given. There is no defeasance and no finding by the court that the deed was intended to secure the appellants alone. The letters fail to show any such intention, and they are consistent with the claim of the plaintiffs. While they indicate that the deed was intended as security for creditors, there is nothing in them, or in the deed, to show that they are to be considered in a technical sense as a part of the same transaction. Neither do they show that Hugo intended to secure the creditors to whom they were addressed to the exclusion of other creditors. They were simply business letters asking for an extension of time; and as an inducement he mentions the fact that he has conveyed certain property to Dewell and Richardson as a guarantee of his good faith in the matter. We cannot therefore treat the deed as a mortgage to those creditors. It conveyed the property to the grantees in trust, not however for the exclusive benefit of the appellants, for the court expressly finds that it was for the benefit of all the creditors. That being so, it was not necessary for the court to pass upon the question of

fraud, nor to set aside the deed. All that the plaintiffs claimed, and all that the court did, was to give effect to the intention of Hugo when he gave the deed, by placing the property in the trustee to be at his disposal for the benefit of all the creditors.

But if the letters, taken by themselves, would indicate an intention on the part of Hugo to give his then existing creditors the sole benefit of the property conveyed, yet they were only a part of the evidence on the subject, and the court has found expressly, upon all the evidence, that his intention was to give all his creditors " then and thereafter existing " the benefit of the security, and without all the evidence before us we cannot see that such was not his intention.

If however the claim of these defendants is that, by force of these letters operating as a contract with them on the part of Hugo, they acquired a right to the security above other creditors to whom such letters were not written, and especially above later creditors, then it becomes a decisive consideration against their claim that these letters are not a part of the deed, and so do not appear with it on record, and therefore cannot affect the rights of later creditors, who are represented by the trustee in insolvency.

And indeed it is an answer to the entire claim of the old creditors that the deed of which they claim the benefit does not disclose its object as security, but is an absolute deed, and therefore of no validity against later attaching creditors or against the trustee in insolvency, who represents all the creditors alike. *Ives* v. *Stone*, 51 Conn., 446.

The court allowed to the plaintiffs, and decreed that there should be paid from the avails of the property, the sum of $295, being the expenses incurred in the prosecution of this suit. The appellants objected.

In cases of this character, where one incurs expense in rescuing property belonging to many, a court of equity has power unquestionably to direct that the expenses so incurred shall be paid from the common fund. The justice of such an allowance in this case is manifest. The objec-

tion comes with ill grace from these appellants, who, by their attempt to appropriate this property to their own exclusive use, have made it necessary to incur this expense. Had the court gone further and required them to pay the taxable costs, they would have had no reason to complain. This is not a question of costs proper. Hence the statute of 1881, providing for taxable costs, and directing that in difficult and extraordinary cases the court may in its discretion make a further allowance of not exceeding one hundred dollars as an attorney fee, has no application to the case.

The reasons of appeal raise the question whether S. E. Merwin & Son, the original plaintiffs, have any interest in the property in question, for the reason that their debt accrued after the deed was given. This point was incidentally alluded to during the argument, but was not seriously pressed, aside from the other points in the case.

They clearly have an interest in the property. It was not sold for a valuable consideration. The grantees held it, not for themselves, but for creditors; not for existing creditors only, but all who might thereafter become creditors. The property in equity sustained the same relation to creditors that it would if the title had remained in Hugo.

There is no error in the judgment complained of.

In this opinion the other judges concurred.