### ROBERT H. NESBIT
*vs.*
### ROSE-HURST FARMS, INC.

Superior Court        New Haven County        File No. 38363

MEMORANDUM FILED NOVEMBER 6, 1940.

*William L. Beers,* of New Haven, for the Plaintiff.

*Joseph Weiner, Thomas J. Ryan,* and *Benjamin F. Goldman,* all of New Haven, for the Defendant.

INGLIS, J. At the request of the applicants, the question as to whether an allowance should be made to them as attorneys for various creditors has been reexamined with the assistance of briefs submitted by the applicants and by The American Agricultural Chemical Company.

One of the grounds taken in the former memorandum was that the allowance should not be made because it was for services in connection with various proceedings, the purpose of which was to avoid preferences given to two creditors whose claims are now allowed as general claims in an amount equal to nearly two-thirds of the general claims and the making of the allowance would result in those two creditors having to pay the attorneys whose services had, if anything, harmed them rather than benefitted them.

The applicants now cite several cases which, at first blush, seem to override that reasoning. One of those cases, and it is typical of all, is in the Supreme Court of this State, to wit,

*Merwin vs. Richardson,* 52 Conn. 223. In that case, at page 237, the following appears: "In cases of this character, where one incurs expense in rescuing property belonging to many, a court of equity has power unquestionably to direct that the expenses so incurred shall be paid from the common fund. The justice of such an allowance in this case is manifest. The objection comes with ill grace from these appellants, who, by their attempt to appropriate this property to their own exclusive use, have made it necessary to incur this expense."

The authority of this case must, of course, be recognized. It may well be borne in mind, however, that the case was decided in 1884 and has not been cited by our court since then. Moreover, although it is in line with a few cases in other jurisdictions, it is in conflict with the more weighty authority, *Louisville, etc. R. Co. vs. Wilson,* 138 U.S. 501, 34 L. ed. 1023, and does not accord with fundamental principles. The fundamental principle is that every litigant must bear his own expenses of litigation except as otherwise provided by statute. The only justification which a court of equity has for passing that burden on to others is based upon the maxim: "equality is equity." The reasoning is that where others are benefitted by the litigation those who are equally benefitted should bear the expense equally. In other words, the justification for making an allowance out of a fund to reimburse one beneficiary of the fund for legal expenses incurred in procuring the fund is that thereby all of the other beneficiaries who are equally benefitted are also equally burdened. It follows, as was stated in the former memorandum, that it is not equitable to make such an allowance where it will result in putting a very substantial portion of the burden on those who are not benefitted. Accordingly, although this court is bound to recognize the holding of the *Merwin* case, it nevertheless should be careful to limit the force of that case to its exact holding and not be astute to extend the application any further than the fair interpretation of that holding requires.

The first thing to be noted about the holding of the *Merwin* case is that it does not hold that a court of equity must make an allowance. It holds simply that "a court of equity has power" to do so; and the mere fact that a portion of the expense is thereby put upon some who have been harmed rather than benefitted by the services does not necessarily prevent the allowance being made. The case, therefore, is

not in conflict with the general principle that the making of allowances to counsel is within the sound discretion of the court. *Masterton vs. Lenox Realty Co.,* 127 Conn. 35; *Bombanello vs. Throm,* 104 id. 504.

With this in mind, one other thing about the *Merwin* case should be noted. It is that in that case the services for which an allowance was made were rendered in that very action. The question involved in the case was as to whether a deed of trust given to the defendants had been given for the benefit of a limited number of Hugo's creditors or for all of them. All of the creditors were made parties to the action. The court held that the trust deed was for the benefit of all and, in the judgment so deciding, it made an allowance to the plaintiff for his attorney's fees to be paid out of the corpus of the trust estate.

That is quite a different situation from the one involved in the present case. As pointed out in the original memorandum, these attorneys were not the ones who represented the plaintiff in this action. The appointment of the receiver was not the direct result of their acts. What they did was to institute some direct actions first to recover amounts due from Nesbit to individual creditors and incidentally to set aside the preferences and secondly to procure a judgment of the Federal court declaring Nesbit a bankrupt. None of these proceedings was carried to judgment. If they had been the attorneys in the bankruptcy proceeding they would have probably received an allowance, but that would have been only for preparing the petitions and certainly the attorney in the actions brought on debts would have received no allowance other than taxable costs. After those actions were brought Nesbit countered them by forming a corporation, turning his assets over to it and then starting these receivership proceedings. Certainly up to that point there had been nothing done by the applicants which would justify an allowance to them in the receivership because they were hostile to the receivership, and were pursuing a different method to protect their clients' interests. The only thing of importance which happened after that was that it was agreed among the receiver, who was then representing all of the creditors, and the two creditors who claimed a preference and the parties represented by these applicants, that one additional receiver be appointed, that Nesbit's personal creditors be treated as creditors of the defendant corporation

and that the two creditors who had been preferred would relinquish their preferences. Parenthetically, it should be stated that it was no part of the agreement, as is suggested in the applicants' brief, that an allowance should be made to them in the receivership. It probably is true that the acts of these applicants, particularly in petitioning Nesbit into involuntary bankruptcy, had a good deal to do in influencing the other parties to enter that agreement, but the causation, if any there were, was, at best, indirect. It is quite a different situation from that involved in the *Merwin* case where the services which were compensated out of the fund resulted directly in a judgment in the particular action in which the services were rendered. Nor is it like the fairly common situation in which a trustee or any person in a fiduciary capacity refuses to act and one beneficiary brings a suit against an outside party which the fiduciary should have brought. In this case the services were practically all rendered before the receiver was appointed and there is no evidence that the receiver would not have proceeded under order of court to avoid the preferences if the question had actually been raised. In other words, the total result of the efforts of the applicants was that, by them, they induced Nesbit to put all of his assets into this receivership. After that was done, the avoidance of the preferences followed as a matter of course, or, if it had not, it would have been brought about by the receiver. That being the case these applicants are in no different position than are the attorneys for individual creditors of any corporation who, by suits on their clients' claims, or threats of suit, bring it about that the stockholders of the company throw it into receivership. If these attorneys were held to be entitled to an allowance out of receivership assets, then logically an allowance would have to be made in every receivership to the attorneys for creditors who just before the receivership had threatened to sue the defendant corporation.

Accordingly, it is concluded that although in some cases, an allowance may be made to attorneys for their services out of a fund even though that results in their being paid out of funds which, in part, otherwise would go to persons whom those services have harmed, nevertheless the making of the allowance lies in the sound discretion of the court. And in this case sound discretion points the other way. In this case equity does not demand that the allowance be made. On the contrary, it would be inequitable to make such an allowance.

The order entered October 23, 1940, denying the application of Messers. Weiner, Goldman and Ryan, will not be opened but may stand.