ROSIE J. DOE ET AL. *v.* STEPHEN HEINTZ ET AL.
(13012)

PETERS, C. J., HEALEY, SHEA, HULL and L. DORSEY, Js.

Argued March 5—decision released June 9, 1987

*Richard T. Couture,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellants (defendants).

*Wesley W. Horton,* with whom was *Susan M. Cormier,* for the appellees (named plaintiff et al.).

*Dennis J. O'Brien* filed a brief for the Connecticut Legal Services, Inc., et al. as amici curiae.

SHEA, J. The defendants have appealed from a supplemental judgment of the trial court awarding attorneys' fees to the class of indigent women represented by the named plaintiff.[1] This class had prevailed in a

---

[1] The named plaintiff at the inception of this litigation obtained an order of the trial court permitting her to prosecute the action under a fictitious name in order to protect her privacy.

suit challenging the validity of a regulation issued by the defendant commissioner of income maintenance[2] concerning state funding for abortions requested by women eligible for state medical assistance. The court had previously, on April 9, 1986, rendered judgment for the plaintiffs on the merits of the action, declaring the regulation invalid and enjoining its enforcement. *Doe* v. *Maher,* 40 Conn. Sup. 394, 515 A.2d 134 (1984). No appeal has been taken from that judgment. The claim of the plaintiffs for attorneys' fees and costs, which was raised in the complaint, was then heard at an additional proceeding and the court, on June 26, 1986, in the supplemental judgment appealed from, awarded to the class of indigent women plaintiffs their attorneys' fees and costs. The dispositive issue raised in the appeal is whether the sovereign immunity of the state bars such an award. We conclude that it does and, therefore, reverse the judgment.

On July 15, 1981, a regulation issued by the defendant commissioner became effective that authorized funding for abortion services under the Connecticut Medical Assistance Program (Medicaid); General Statutes §§ 17-134a through 17-134*l*; only when the following condition was met: "On the basis of his professional judgment, the attending physician has certified in writing that the abortion is necessary because the life of the mother would be endangered if the fetus were carried to term."[3] The named plaintiff and her physician,

---

[2] Both the commissioner of income maintenance and the state treasurer are defendants in this case and the trial court rendered judgment against both. The interests of both defendants coincide.

[3] The July 15, 1981 regulation of the department of income maintenance that the plaintiffs have successfully challenged corresponded closely to the June 5, 1981 version of the Hyde Amendment as enacted by Congress. See Supplemental Appropriations and Rescission Act of 1981, Pub. L. 97-12, § 402, 95 Stat. 96. Under this legislation federal funding of abortions for Medicaid recipients was restricted to situations "where the life of the mother would be endangered if the fetus were carried to term." The amendment

on August 20, 1981, brought this class action challenging the regulation. On the following day the trial court issued, ex parte, a temporary injunction requiring the defendants to pay the cost of the named plaintiff's abortion, which was found to be medically necessary[4] although not necessary to save her life. After a hearing on October 9, 1981, the court certified two classes of plaintiffs: (1) indigent pregnant women eligible for Medicaid who seek a medically necessary abortion, represented by the named plaintiff; and (2) physicians certified by the state to provide medical care under Medicaid who agree to perform medically necessary abortions or advise women concerning them, represented by the named plaintiff's physician. The court then also expanded the scope of the existing temporary injunction in favor of the named plaintiff to include other members of her class and enjoined the enforcement of the regulation.

Almost five years later, on April 9, 1986, the court, after a trial on the merits, rendered a declaratory judgment that the regulation at issue was invalid because it contravened General Statutes §§ 17-134a through 17-134*l* and violated the rights to due process of both

also provided that "the several States are and shall remain free not to fund abortions to the extent that they in their sole discretion deem appropriate." On June 30, 1980, the United States Supreme Court had upheld the constitutionality of an earlier formulation of the Hyde Amendment, rejecting claims that it violated the due process right of a woman to terminate her pregnancy, that it violated freedom of religion, and that it denied indigent women equal protection of the laws. *Harris* v. *McRae*, 448 U.S. 297, 100 S. Ct. 2671, 65 L. Ed. 2d 784, reh. denied, 448 U.S. 917, 101 S. Ct. 39, 65 L. Ed. 2d 1180 (1980). The court also had concluded that federal statutes did not require a state to fund medically necessary abortions for which federal reimbursement was unavailable under the Hyde Amendment. Id., 309; see *Williams* v. *Zbaraz*, 448 U.S. 358, 369, 100 S. Ct. 2694, 65 L. Ed. 2d 831, reh. denied, 448 U.S. 917, 101 S. Ct. 38, 39, 65 L. Ed. 2d 1180 (1980).

[4] The term "medically necessary abortions" was later defined in the judgment on the merits to mean "those abortions necessary to ameliorate a condition that is deleterious to a woman's physical and/or psychological health . . . ."

classes of plaintiffs under § 10 of article first of our state constitution as well as the right of the indigent women class to equal protection of the laws under §§ 1 and 20 of that article. The court also permanently enjoined the enforcement of the regulation and ordered the defendants to pay the cost of all medically necessary abortions to the same extent as other medical expenses are paid under the Medicaid program. In this appeal the state has not challenged the trial court's judgment of April 9, 1986, so we have no occasion to consider its merits.

The supplemental judgment that is the subject of this appeal was rendered on June 26, 1986, after a further evidentiary hearing pursuant to a bifurcation order on the claim made in the complaint for attorneys' fees. The court denied the request for attorneys' fees and costs made by the class of physicians,[5] but awarded to the class of indigent women the sum of $164,942.83 for attorneys' fees and costs. In appealing from that judgment the defendants claim that the award violates the sovereign immunity of the state, is not authorized by any statute, and is contrary to the established precedent that, in the absence of a special agreement or an applicable statute, each litigant must bear his own legal expenses. The defendants also contend that the award was excessive.

I

Before deciding whether the sovereign immunity of the state shields the defendants from liability for attorneys' fees and costs incurred by the plaintiff women as prevailing parties in this litigation, it is well to consider whether the circumstances would justify such an award in the absence of such an immunity. The plaintiffs as well as the trial court have relied for support

---

[5] No appeal has been taken by the physician class of plaintiffs to challenge this ruling.

of the award partly upon various exceptions, both statutory and nonstatutory, to the general disallowance of attorneys' fees to prevailing parties.[6] By statute, of course, an unsuccessful litigant is obliged to pay the taxable costs of his opponent, which include not only disbursements actually made for such items as court filing fees,[7] but also small allowances intended to defray partially the cost of some services normally performed by attorneys, such as "[f]or all proceedings before trial, fifty dollars" and "for the trial of an issue of law or fact, seventy-five dollars." General Statutes § 52-257 (a) (1) and (2). "[I]n difficult or extraordinary cases in the superior court, where a defense has been interposed, a further allowance, in the discretion of the court, not to exceed two hundred dollars" may be made. General Statutes § 52-257 (a) (3).

Claims for attorneys' fees in the absence of statutory authority or contractual provision, however, have generally been rejected by the courts of this country,

---

[6] The concurring opinion disputes the propriety of discussing any of the exceptions to the rule prohibiting attorneys' fees to be awarded to the successful litigant in view of our ultimate conclusion that the plaintiffs' claim for attorneys' fees should have been dismissed. If, however, any of these exceptions were applicable, we should properly consider whether it afforded a basis for avoiding the doctrine of sovereign immunity, as the trial court concluded in respect to the two statutory exceptions relied upon, General Statutes §§ 4-184a and 52-251b. We note that in *Sullivan* v. *State,* 189 Conn. 550, 553, 457 A.2d 304 (1983), we first resolved the nonconstitutional grounds raised in support of a claim against the state before dismissing, for failure to exhaust the administrative remedy available through the claims commissioner, the constitutional ground advanced to overcome the doctrine of sovereign immunity. We relied upon our resolution of the nonconstitutional issues in reaching the conclusion that an application for permission to sue the state under General Statutes § 4-160 (a) would have been fruitless, a determination we also make in this appeal.

[7] Practice Book § 50 at the time this action was commenced provided for a waiver of court costs and necessary expenses in commencing an action by an indigent "[i]n any case in which the plaintiff, without such a waiver, will be deprived of a right by which he is entitled to bring an action . . . ." The named plaintiff never sought such a waiver when this suit was brought.

unlike those in England.[8] "In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Service Co.* v. *Wilderness Society,* 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975). This court has recently indicated our adherence to this so called "American rule." *Brookfield* v. *Candlewood Shores Estates, Inc.,* 201 Conn. 1, 14–15, 513 A.2d 1218 (1986). There are, however, numerous statutory exceptions to the rule and also several others created by the courts without legislative authority. See *Alyeska Pipeline Service Co.* v. *Wilderness Society,* supra, 257–59. Two of these court-authored exceptions are relied upon by the plaintiffs: (1) the private attorney general doctrine; and (2) the substantial benefit rule.

A

The private attorney general exception would authorize the court to award attorneys' fees to the successful litigant upon a determination that "the litigation has resulted in the vindication of a strong or societally important public policy, that the necessary costs of securing this result transcend the individual plaintiff's pecuniary interest to an extent requiring subsidization, and that a substantial number of persons stand to benefit from the decision . . . ." *Serrano* v. *Priest,* 20 Cal.

---

[8] " 'As early as 1278, the courts of England were authorized to award counsel fees to successful plaintiffs in litigation. Similarly, since 1607 English courts have been empowered to award counsel fees to defendants in all actions where such awards might be made to plaintiffs. Rules governing administration of these and related provisions have developed over the years. It is now customary in England, after litigation of substantive claims has terminated, to conduct separate hearings before special "taxing Masters" in order to determine the appropriateness and the size of an award of counsel fees. To prevent the ancillary proceedings from becoming unduly protracted and burdensome, fees which may be included in an award are usually prescribed, even including the amounts that may be recovered for letters drafted on behalf of a client.' " *Alyeska Pipeline Service Co.* v. *Wilderness Society,* 421 U.S. 240, 247 n.18, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975).

3d 25, 45, 569 P.2d 1303, 141 Cal. Rptr. 315 (1977); see *Miotke* v. *Spokane,* 101 Wash. 2d 307, 340–41, 678 P.2d 803 (1984). Although the trial court found that the plaintiffs had satisfied these criteria by "overwhelming evidence," it concluded that "such a broad rule is generally one for the legislature to consider" and rejected this basis for awarding attorneys' fees.

In *Alyeska* the two dissenting justices advanced the private attorney general theory to support an attorneys' fee award to an association of environmentalists, but the majority decided that adoption of that principle "would make major inroads on a policy matter that Congress has reserved for itself" in view of the existence of legislation authorizing attorneys' fees in many specified instances where public benefits flow from private enforcement of the law, such as in antitrust suits, patent litigation and civil rights actions.[9] *Alyeska Pipeline Service Co.* v. *Wilderness Society,* supra, 264–69. Like Congress, our legislature also has enacted statutes permitting attorneys' fees to be awarded to a successful litigant in particular instances where a significant public interest has been vindicated by the litigation. Some examples are antitrust suits by consumers where injunctions are granted; General Statutes § 35-34; claims for trade secret misappropriation that are made in bad faith; General Statutes § 35-54; and actions for damages resulting from unfair trade practices. General Statutes § 42-110g. Indeed, the legislature has specifically authorized the recovery of reasonable fees and expenses not exceeding $7500 against

[9] The majority also relied upon a federal statute, 28 U.S.C. § 2412, which permits costs in civil actions to be taxed against the United States, "but not including the fees and expenses of attorneys," pointing out the incongruity of allowing attorneys' fees against private parties when the statute precludes such an award against the government, which is often the principal culprit in actions where the private attorney general theory would be applicable. *Alyeska Pipeline Service Co.* v. *Wilderness Society,* 421 U.S. 240, 267, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975).

the state in a successful appeal of an administrative agency decision in a contested case for all but the most affluent of aggrieved persons. General Statutes § 4-184a.[10] In view of this legislative policy of selecting the special situations where attorneys' fees may be awarded, we agree with the trial court that it is inappropriate for the judiciary to establish under the private attorney general doctrine a broad rule permitting such fees whenever a private litigant has at substantial cost to himself succeeded in enforcing a significant social policy that may benefit others.

### B

The substantial benefit doctrine advanced to support the award of attorneys' fees in this case is based upon the principle that, where a successful suit has conferred a substantial benefit on the members of an ascertainable class, the costs of the litigation should be borne proportionately by all those benefited. *Hall* v. *Cole,* 412 U.S. 1, 5, 93 S. Ct. 1943, 36 L. Ed. 2d 702 (1973); *Mills* v. *Electric Auto-Lite Co.,* 396 U.S. 375, 393–94, 90 S.

---

[10] "[General Statutes] Sec. 4-184a. AWARD OF REASONABLE FEES AND EXPENSES TO CERTAIN PREVAILING PARTIES IN APPEALS OF AGENCY DECISIONS. (a) For the purposes of this section:

"(1) 'Person' means a person as defined in section 4-166, but excludes (A) an individual with a net worth in excess of five hundred thousand dollars, (B) a business whose gross revenues for the most recently completed fiscal year exceeded one million five hundred thousand dollars, and (C) a business with more than twenty-five employees.

"(2) 'Reasonable fees and expenses' means any expenses not in excess of seven thousand five hundred dollars which the court finds were reasonably incurred in opposing the agency action, including court costs, expenses incurred in administrative proceedings, attorneys' fees, witness fees of all necessary witnesses, and such other expenses as were reasonably incurred.

"(b) In any appeal by an aggrieved person of an agency decision taken in accordance with section 4-183 and in any appeal of the final judgment of the superior court under said section taken in accordance with sections 51-197b, the court may, in its discretion, award to the prevailing party, other than the agency, reasonable fees and expenses in addition to other costs if the court determines that the action of the agency was undertaken without any substantial justification."

Ct. 616, 24 L. Ed. 2d 593 (1970); *Merwin* v. *Richardson,* 52 Conn. 223, 237 (1884); *Nesbit* v. *Rose-Hurst Farms, Inc.,* 8 Conn. Sup. 480, 482–83 (1940). In these cases courts have been able to identify a source for payment of litigation expenses in which substantially all those benefited have a common interest, such as a recovery inuring to the benefit of others similarly situated; *Sprague* v. *Ticonic National Bank,* 307 U.S. 161, 166–67, 59 S. Ct. 777, 83 L. Ed. 1184 (1939); a corporate treasury, even though the accruing benefit to stockholders is nonpecuniary; *Mills* v. *Electric Auto-Lite Co.,* supra; a union treasury, when individual rights of members within the organization are vindicated; *Hall* v. *Cole,* supra; or the assets of a marriage under the control of one spouse but in which both husband and wife have a substantial interest. *Steinmann* v. *Steinmann,* 121 Conn. 498, 505, 186 A. 501 (1936). The award of counsel fees in this case runs against the state treasury, however, a fund in which all citizens of this state, not just the plaintiff class of indigent women who may seek abortions, have a common interest. The equitable principle that all those who benefit from the litigation should share its costs, therefore, is inapplicable.[11]

## C

In making its award, the trial court relied upon the traditional power of the chancellor to do equity in a particular situation and thus to allow attorneys' fees "when the interests of justice so require"; *Hall* v. *Cole,* supra, 4–5; or whenever "overriding considerations indicate the need for such a recovery." *Mills* v. *Electric Auto-Lite Co.,* supra, 391–92. The court also drew upon the statutory analogy of General Statutes § 52-251b, which allows a reasonable attorneys' fee to the prevail-

---

[11] The trial court did not expressly address the substantial benefit rationale proposed by the plaintiffs, and appears not to have relied upon it.

ing party "[i]n any civil action to recover damages for injury to the person or to real or personal property arising out of a violation of section 46a-58 . . . ." The referenced statute makes it a "discriminatory practice" to subject any person "to the deprivation of any rights, privileges or immunities, secured or protected by the constitution or laws of this state or of the United States, on account of religion, national origin, alienage, color, race, sex, blindness or physical disability."

The court also noted that if the plaintiff had pursued the administrative remedy of appealing from a denial of her request for benefits pursuant to General Statutes § 4-183, a provision of our Uniform Administrative Procedure Act, she might have been eligible for an award of counsel fees in accordance with § 4-184a. The failure to exhaust or even attempt an administrative solution of her predicament, however, was excused "because such a remedy would be inadequate and futile."

The general equitable principle that a court must do what the interests of justice require provides little useful guidance in deciding whether to deviate from so well entrenched a rule of our jurisprudence as that which requires each party, in the absence of agreement or statute, to bear his own litigation expenses. Although some may question the pattern of exceptions to the rule that the General Assembly has painstakingly developed, the inference of legislative approval of the general prohibition against attorneys' fee awards to a prevailing party cannot be ignored. For this reason the trial court's resort by analogy to § 52-251b, which was not enacted until 1984, three years after commencement of this action, was inappropriate. Statutory analogies may furnish guidance in filling a void in the law, but cannot be utilized to extend a statute tailored for a precisely defined situation to others not included within its terms. In addition to the judicial policy against con-

struing statutes to modify substantive liability for past deeds; *Neiditz* v. *Morton S. Fine & Associates, Inc.,* 199 Conn. 683, 691, 508 A.2d 438 (1986); and the general provision of General Statutes § 1-1 (u) that "[t]he passage or repeal of an act shall not affect any action then pending," subsection (b) of § 52-251b provides that the statute "shall not be deemed: (1) To create a new cause of action . . . or (2) to confer any new jurisdiction upon the superior court . . . . "[12] Furthermore, the statute applies only to a "civil action to recover damages for injury to the person or to real or personal property arising out of a violation of section 46a-58 . . . ." Leaving aside questions of whether this action involved a violation of § 46a-58 or whether the plaintiffs' grievances could be deemed to constitute "injury to the person," it is plain that no damages were awarded by the court or even sought in the complaint as finally amended.[13]

The reliance of the trial court on § 4-184a, allowing attorneys' fee awards to all but wealthy prevailing parties in administrative appeals "if the court determines that the action of the agency was undertaken without any substantial justification," was similarly misplaced. Aside from whether the issuance of the invalidated

---

[12] The amici curiae brief filed by four legal service organizations in support of the attorneys' fee award argues that General Statutes § 52-251b should be applied retroactively in this case, relying upon *Bradley* v. *Richmond School Board,* 416 U.S. 696, 710-24, 94 S. Ct. 2006, 40 L. Ed. 2d 476 (1974). In that case, however, no provision of federal statutory law is mentioned comparable to General Statutes § 1-1 (u) which exempts pending actions from new enactments. Furthermore, the federal statute then allowing fee awards in cases involving racial discrimination in education; 20 U.S.C. § 1617 which was later repealed; contained no limitation that would militate against retroactive application such as the provision of General Statutes § 52-251b (b) that no new cause of action was intended to be created.

[13] The original complaint claimed damages as well as other relief. The claim for damages was withdrawn after the defendants had filed a motion to dismiss.

regulation was "without any substantial justification," an issue we find it unnecessary to address, this statute indicates no intention on the part of the legislature to allow attorneys' fees to be recovered by successful litigants outside the route of an administrative appeal. We must presume that the legislature had sufficient reason to limit this relief to administrative appeals. One justification may have been to encourage utilization of the administrative process. Although that avenue might not have provided the named plaintiff or others in the same predicament with the immediate relief that may have been necessary, it might well have been pursued successfully during the ensuing five years while this action languished in the trial court, the period during which most of the litigation expenses were incurred. The pendency of this action would not have barred resort to the administrative remedy.

Our review of the statutes relied upon by the trial court as lending support for an award of counsel fees has brought us to the wholly different conclusion that they were never intended to apply to the circumstances of the case before us and that their inapplicability demands that we respect the legislative prerogative of choosing the special circumstances under which such awards may be made.

### D

The remaining grounds relied upon in the memorandum of decision relate to the trial court's view that it is the constitutional duty of the state to provide access to the judicial process for the litigation of certain constitutional claims against state officials by persons without financial means to engage the services of attorneys. No parallel duty can be found on the part of a private party defendant, who would obviously have no constitutional obligation to assist in the implementation of the constitutional rights of others. In the absence of an

applicable statute, the award of attorneys' fees is precluded even where a defendant's conduct may be held to have violated a plaintiff's constitutional right. See *Hall* v. *United States,* 773 F.2d 703, 706–708 (6th Cir. 1985); *Smith* v. *Cumberland School Committee,* 703 F.2d 4, 7–9 (1st Cir. 1983).

Some additional situations in which courts have undertaken to award attorneys' fees without statutory authority are those involving willful disobedience of a court order or deceitful, vexatious or other reprehensible conduct on the part of a defendant. *Alyeska Pipeline Service Co.* v. *Wilderness Society,* supra, 258–59. In Connecticut an award of punitive damages for an intentional tort is limited to the amount of attorneys' fees incurred by the plaintiff in the suit; *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 236–38, 477 A.2d 988 (1984); and thus may be viewed as a further instance of a nonstatutory award of such fees. Neither the plaintiffs nor the trial court, however, have relied upon any of these exceptions.

Our review of the circumstances under which awards of attorneys' fees may be made against private party defendants who lose a law suit makes it evident that, if the defendants in this case had been private individuals rather than state officials mantled by the state's sovereign immunity, no award against them for the attorneys' fees of the indigent plaintiffs would have been warranted. The significance of this conclusion for our subsequent discussion of the assertion of the sovereign immunity defense by the defendants is that the classic criticism of that defense, that it exempts state officials from a liability that is imposed on others under the same circumstances, is not applicable to this case. The question for us is whether a liability should be imposed upon the state that the law does not impose on others.

## II

"We have . . . recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." *Sentner* v. *Board of Trustees,* 184 Conn. 339, 342, 439 A.2d 1033 (1981). In its pristine form the doctrine of sovereign immunity would exempt the state from suit entirely, because the sovereign could not be sued in its own courts and "there can be no legal right as against the authority that makes the law on which the right depends." *Kawananakoa* v. *Polyblank,* 205 U.S. 349, 353, 27 S. Ct. 526, 51 L. Ed. 834 (1907); *Bergner* v. *State,* 144 Conn. 282, 284–85, 130 A.2d 293 (1957). This absolute bar of actions against the state has been greatly modified both by statutes effectively consenting to suit in some instances as well as by judicial decisions in others. "In a constitutional democracy sovereign immunity must relax its bar when suits against the government complain of unconstitutional acts." *Sentner* v. *Board of Trustees,* supra, 343. Sovereign immunity does not bar suits against state officials acting in excess of their statutory authority or pursuant to an unconstitutional statute. *Horton* v. *Meskill,* 172 Conn. 615, 624, 376 A.2d 359 (1977). This court has accordingly entertained suits like the present action, in which declaratory relief is sought as well as related injunctive relief; *Rogan* v. *Board of Trustees for State Colleges,* 178 Conn. 579, 424 A.2d 274 (1979); and also suits seeking only to enjoin state officers from illegal or unconstitutional acts. *Sentner* v. *Board of Trustees,* supra, 344–45; see *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 388, 512 A.2d 152 (1986); *Duguay* v. *Hopkins,* 191 Conn. 222, 227 n.4, 464 A.2d 45 (1983). With respect to the declaratory and injunctive relief sought by the plaintiffs and ordered

by the court in this case, these precedents plainly establish that sovereign immunity is unavailable as a defense, nor does the state claim otherwise.

In the absence of legislative authority, however, we have declined to permit any monetary award against the state or its officials. *Fetterman* v. *University of Connecticut,* 192 Conn. 539, 550, 473 A.2d 1176 (1984); *State* v. *Chapman,* 176 Conn. 362, 365, 407 A.2d 987 (1978). "The claims for damages brought against [the University of Connecticut] and certain officials at the university are, in effect, actions against the state as a sovereign and are, therefore, barred by the doctrine of sovereign immunity." *Fetterman* v. *University of Connecticut,* supra. We have excepted declaratory and injunctive relief from the sovereign immunity doctrine on the ground that a court may fashion these remedies in such a manner as to minimize disruption of government and to afford an opportunity for voluntary compliance with the judgment. *Sentner* v. *Board of Trustees,* supra. We have adjudicated the rights of the parties in such cases acting on the presumption that other governmental departments will accede to our interpretation of the applicable law. *Horton* v. *Meskill,* supra, 627–28. A money judgment, however, is directly enforceable, without further court intervention, against any property of the judgment debtor that is not statutorily exempt. General Statutes § 52-350f.

Even where the monetary award is so minimal as the sum a prevailing party would be entitled to receive as taxable costs under General Statutes § 52-257, this court has refused to sanction a monetary judgment against the state in the absence of explicit statutory authority. *State* v. *Chapman,* supra. "A statute giving a right to costs in general terms will not be construed to include an award against the State, because the State is invested with the immunities from legal process, mesne and final, which at common law belonged to the

King and there would be no power in the court to enforce its decree." Id.; *State* v. *Anderson,* 82 Conn. 392, 393–94, 73 A. 751 (1909). "[I]t is a general principle that what courts cannot enforce they cannot decree." *State* v. *Anderson,* supra, 393; see *Pellegrino* v. *O'Neill,* 193 Conn. 670, 683, 480 A.2d 476, cert. denied, 469 U.S. 875, 105 S. Ct. 236, 83 L. Ed. 2d 176 (1984). Our refusal to permit an award of so trifling a sum as taxable costs against the state on the ground that sovereign immunity foreclosed such an interpretation of the general terms of our taxation of costs statute strongly militates against approval of the much more substantial award of attorneys' fees made in this case.

The trial court plainly recognized the weight of legal precedent barring a monetary award against the state, but concluded that in this case the necessity of an award of counsel fees so that the indigent plaintiffs could enforce their constitutional rights outweighed the policies implicated in the doctrine of sovereign immunity. Apart from reliance upon judicial precedent and statutory analogy, the central thrust of the trial court's decision is that the plaintiff class of indigent women had been deprived of a constitutional as well as statutory right to a state financed abortion by the regulation of the defendant commissioner limiting state funding of abortions to only those endangering life. The court concluded that to implement their right to judicial redress of injuries as provided by our state constitution, article first, § 10, the services of attorneys were essential and should be paid for by the state. Thus, the court, as well as the plaintiffs, relied for a constitutional ground upon this state constitutional right of redress to override the defense of sovereign immunity rather than upon any federal constitutional provision.

We find it unnecessary to address the merits of the constitutional issues raised concerning the scope of the

right of redress under our state constitution, because the record does not indicate that the plaintiffs have exhausted the administrative remedy available to them of presenting their claim for attorneys' fees first to the claims commissioner in accordance with General Statutes §§ 4-141 through 4-165b. "It is a cardinal principle of judicial review 'that when an adequate administrative remedy is provided by law, it should be exhausted.' *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 357, 377 A.2d 1099 (1977); see *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.,* 178 Conn. 586, 588, 424 A.2d 285 (1979); *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 467, 378 A.2d 547 (1977); *Wagner* v. *Connecticut Personnel Appeal Board,* 170 Conn. 668, 671, 368 A.2d 20 (1976); 3 Davis, Administrative Law § 20.01; General Statutes § 4-183 (a); 2 Am. Jur. 2d, Administrative Law § 595. Claims of constitutional violations are no exception to this general rule. See *Florentine* v. *Darien,* 142 Conn. 415, 426–27, 115 A.2d 328 (1955). Application of this principle, however, is limited to those situations where the pursuit of administrative remedies is not necessarily futile. See *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.,* supra, 588; *Bianco* v. *Darien,* 157 Conn. 548, 554–55, 254 A.2d 898 (1969); 2 Am. Jur. 2d, Administrative Law § 603." *Sullivan* v. *State,* 189 Conn. 550, 553–54, 457 A.2d 304 (1983).

Although the failure of the plaintiffs to resort to the claims commissioner for the monetary relief they seek was never raised at trial or on appeal, we must nevertheless determine whether they have bypassed an administrative remedy, because exhaustion of such an alternative means of relief is a prerequisite to our jurisdiction to consider their constitutional claim. Id., 559. "When an administrative remedy is provided by law, relief must be sought by exhausting this remedy

before resort to the courts." *McNish* v. *American Brass Co.*, 139 Conn. 44, 53, 89 A.2d 566 (1952), cert. denied, 344 U.S. 913, 73 S. Ct. 336, 97 L. Ed. 704 (1953); see *Laurel Park, Inc.* v. *Pac*, 194 Conn. 677, 689, 485 A.2d 1272 (1984). Because the exhaustion issue implicates our jurisdiction to address the constitutional ground relied upon by the plaintiffs, it must be resolved even though it has not been raised by the defendants. "The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention." *Woodmont Assn.* v. *Milford,* 85 Conn. 517, 524, 84 A. 307 (1912).

In implementing article eleventh, § 4,[14] of our state constitution, the legislature has established a tribunal, the claims commissioner, for the adjudication of claims against the state where monetary relief is sought. General Statutes §§ 4-141, 4-142; *Hirschfeld* v. *Commission on Claims,* 172 Conn. 603, 604, 376 A.2d 71 (1977). The claims commissioner is authorized to "approve immediate payment of just claims not exceeding [$7500]." General Statutes § 4-158. For claims greater than that sum, the claims commissioner must recommend their payment or rejection to the general assembly which "may accept, alter or reject any such recommendation." General Statutes § 4-159. The claims commissioner also, when he "deems it just and equitable," may effectively waive the state's sovereign immunity by authorizing suit "on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable." General Statutes § 4-160 (a). This legislation expressly bars suits upon claims cognizable by the claims commissioner except as he may authorize, an indication of the legislative determination to preserve sovereign immunity

[14] Article eleventh, § 4, of our state constitution provides: "Claims against the state shall be resolved in such manner as may be provided by law."

as a defense to monetary claims against the state not sanctioned by the commissioner or other statutory provisions. General Statutes §§ 4-148 (b), 4-160.

The claim of the plaintiffs for attorneys' fees incurred in obtaining necessary health related benefits erroneously denied to them by state officials falls within the jurisdiction of the claims commissioner, as set forth in § 4-142, to "hear and determine all claims against the state," with five exceptions, none of which are applicable.[15] "The state claims commissioner is charged with the duty to hear and determine all petitions for the payment or refund of money from the state or for permission to sue the state." *Sullivan* v. *State,* supra, 555. Our determination in part I that a private party in the same position as the state in this case would not have been liable for attorneys' fees would render fruitless an authorization to sue the state, because its liability in such a suit is "coextensive" with that of a private person. General Statues § 4-160 (a). If the claim had been timely filed,[16] however, the commissioner would

---

[15] General Statutes § 4-142 provides: "There shall be a claims commissioner who shall hear and determine all claims against the state except: (1) Claims for the periodic payment of disability, pension, retirement or other employment benefits; (2) claims upon which suit otherwise is authorized by law; (3) claims for which an administrative hearing procedure otherwise is established by law; (4) requests by political subdivisions of the state for the payment of grants in lieu of taxes, and (5) claims for the refund of taxes."

The plaintiffs' claim for attorneys' fees obviously does not fall within the subject matter of the first, fourth and fifth exceptions. Our determination that this claim, but for the constitutional ground relied upon that we do not address, would be barred by sovereign immunity makes it clear that it does not fall within the second exception, where "suit otherwise is authorized by law." With respect to the third exception, "claims for which an administrative hearing procedure otherwise is established by law," there is no agency but the claims commissioner that is authorized to consider the plaintiffs' claim for attorneys' fees incurred in this litigation.

[16] General Statutes § 4-148 (a) provides: "No claim shall be presented under this chapter but within one year after it accrues. Claims for injury to person or damage to property shall be deemed to accrue on the date

have been empowered to consider whether the plaintiffs' demand for attorneys' fees constituted a "just claim," one that "in equity and justice the state should pay, provided the state has caused damage or injury or has received a benefit . . . ." General Statutes § 4-141.

"Since we are not aware of any legal barrier to the presentation of the plaintiff's claim to the commissioner or to his favorable action upon it, we cannot assume that recourse to that procedure would necessarily have been futile or inadequate." *Sullivan* v. *State,* supra, 559. The failure of the plaintiffs to pursue this administrative remedy precludes an adjudication of the constitutional claim they have raised. Id. No determination of whether a constitutional necessity exists that would supersede the state's sovereign immunity can be made when the alternative procedure available through the claims commissioner, which might have provided the relief sought, has been ignored. Id.; see *Holt-Lock, Inc.* v. *Zoning & Planning Commission,* 161 Conn. 182, 186, 286 A.2d 299 (1971). We conclude that the trial court should have dismissed the plaintiffs' claim for attorneys' fees.

There is error in the supplemental judgment awarding counsel fees and costs to the plaintiffs, that judgment is set aside and the case is remanded to the trial court with direction to render judgment dismissing the claim for such an award.

In this opinion HEALEY and L. DORSEY, Js., concurred.

PETERS, C. J., with whom HULL, J., joins, concurring. I agree with the majority opinion that this case

---

when the damage or injury is sustained or discovered or in the exercise of reasonable care should have been discovered, provided no claim shall be presented more than three years from the date of the act or event complained of."

is governed by the holding of *Sullivan* v. *State,* 189 Conn. 550, 553–54, 457 A.2d 304 (1983). Accordingly, the trial court lacked jurisdiction to consider the merits of the plaintiffs' cause of action because they failed to exhaust the administrative remedy of filing a claim for monetary relief with the claims commissioner.

Once it becomes clear that the trial court lacked subject matter jurisdiction to hear the plaintiffs' complaint, any further discussion of the merits is pure dicta. Lacking jurisdiction, neither the trial court nor this court should deliver an advisory opinion on matters entirely beyond our power to adjudicate. See *Neyland* v. *Board of Education,* 195 Conn. 174, 177, 487 A.2d 181 (1985); *State* v. *Parker,* 194 Conn. 650, 657 n.7, 485 A.2d 139 (1984). Although it is accepted judicial practice to consider and resolve statutory issues before reaching constitutional conundra; see *Moore* v. *McNamara,* 201 Conn. 16, 21, 513 A.2d 660 (1986); *State* v. *Madera,* 198 Conn. 92, 105, 503 A.2d 136 (1985); we have not previously indulged in statutory or common law exegesis in the absence of jurisdiction. I disagree therefore with the propriety and the substance of all of the majority opinion with the exception of the jurisdictional holding based on *Sullivan* v. *State,* supra.