[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO DISMISS
Plaintiff brings this action in two counts for a declaratory judgment
 "declaring that the State's plans to construct the Jail (i.e., the WCCCC) without an adequate sedimentation and erosion control plan, to create CT Page 130 new stormwater discharges, to construct. stormwater detention basins, drainage outlet structures and portions of the loop road within or adjacent to wetlands, to upgrade the proposed construction road from Nunnawauk Road to the Jail site and to conduct any other regulated activity without having applied for or received the necessary permit and/or permits for these activities from the DEP is in violation of the Inland Wetlands and Watercourses Act, Conn. Gen. Stat. 22a-36 through 22a-45 and the regulations promulgated thereunder;
 2. A judgment declaring that the siting and construction of the Jail by defendants is in violation of 22a-1b(b) of the Connecticut Environmental Policy Act, Conn. Gen. Stat. 22a-1b(b) and Conn. Agencies Regs. 22a-1a-1
through 22a-1a-12; "
The plaintiffs also seek the following injunctive relief:
 "3. A temporary and permanent injunction barring the State from constructing the Jail without an adequate sedimentation and erosion control plan, from creating new stormwater discharges, from constructing stormwater detention basins and drainage outlet structures and portions of the proposed loop road within or adjacent to wetlands, from upgrading the proposed construction road from Nunnawauk Road to the Jail site and from conducting any other regulated activity or contemplated regulated activity until such time as it applies for an receives the necessary permit and/or permits from the DEP to perform such works
 4. A temporary and permanent injunction barring the construction of the Jail until such time as plaintiffs [sic] prepare an EIE which (a) was conducted prior to making a decision on the proposed action, (b) analyzes alternatives adequately, (c) addresses substantive and significant issues raised during the scoping process, (d) responds to the loss of open space by the development of the site and (e) collects sufficient base data to independently and adequately analyze direct and indirect effects on the Pootatuck Aquifer, wastewater treatment facilities, flooding, erosion and sedimentation, air quality, human health and safety, and traffic CT Page 131 and energy conservation;"
Defendants move to dismiss "due to lack of jurisdiction over the subject matter."
I. Procedural History
This action was commenced in the Judicial District of Danbury on or about August 7, 1989. A motion to dismiss was filed in that district on August 18, 1989 claiming that the court lacked subject matter jurisdiction for the following reasons: (a) the state may not be sued because of the doctrine of sovereign immunity; (b) that there are available alternative remedies to the requested declaratory judgment; (c) plaintiffs have failed to exhaust their administrative remedies; and (d) plaintiffs have failed to give notice to "all interested parties." That motion was dismissed (Mottolese, J.) without prejudice on September 12, 1989.
On September 12, 1989 this action was transferred to this Judicial District for Hartford-New Britain.
On September 15, 1989 a second motion to dismiss was filed claiming simply "lack of jurisdiction over the subject matter." The motion to dismiss was argued November 28, 1989.
II. Facts
A. Found
The defendants in this action are William A. O'Neill, Governor of the State of Connecticut; the State of Connecticut; Leonard G. Barbieri, Deputy Commissioner of the Connecticut Department of Correction (DOC); Anthony V. Milano, Secretary of the Connecticut Office of Policy and Management (OPM); William H. Carbone, Undersecretary of the Connecticut Office of Policy and Management, and Donald Cassin, Commissioner of the Connecticut Department of Public Works (DPW). All the individuals are sued in their official capacities as officers of the State of Connecticut.
The state of Connecticut needs to build secure facilities to hold prisoners. It seeks to build one (the Jail) in the town of Newtown on a 65-acre tract to house some 400 prisoners.
B. Alleged
On or about February 1987, the defendants, their agencies, staffs, and consultants purportedly initiated a siting process for the purpose of locating two new correctional facilities. CT Page 132
On or about June 8, 1987 DPW announced it had identified six potential sites for the construction of the Jail. One of those is a 65-acre tract of land on Nunnawauk Road in Newtown, which includes part of the grounds of Fairfield Hills Hospital owned by the Connecticut Department of Mental Health (DMH).
The DPW had previously entered into a contract on or about November 4, 1986 with Antinozzi Associates, P.C. (Antinozzi), an architectural firm, to evaluate the six sites and choose one for the construction of the Jail. On or about July 27, 1987, Antinozzi submitted its final report to DPW. The report selected Newtown as the site for the Jail and on or about July 30, 1987, Cassin publicly announced that the State had selected that site.
On or about April 25, 1988, the DPW entered into a contract with Antinozzi for architectural services in connection with the Jail.
During the summer of 1988, and prior to the preparation of an Environmental Impact Evaluation (EIE), the DMH transferred a parcel of the Fairfield Hills Hospital property in Newtown, including approximately 114 acres, to the DOC.
Approximately 15 acres of the site consist of regulated wetlands.
In October 1988, a draft EIE for the Jail was prepared at the direction of the DOC. Said draft does not comply with the Connecticut Environmental Policy Act (CEPA), General Statutes 22a-1 — 22a-1h and Connecticut Agencies Regulations22a-1a-1 — 22a-1a-12. The EIE listed several permits required for the construction and operation of the proposed Jail.
On or about November 8, 1988, the DPW entered into a contract with Turner Construction Company, Inc. (Turner) of Norwalk, Connecticut for construction management services in connection with the Jail.
In or about January 1989, the DOC released a Record of Decision (ROD), EIE. In February 1989, defendants Barbieri and Carbone, together with contractors and legal counsel, met with plaintiff Roderick J. MacKenzie (MacKenzie) to address concerns raised by plaintiff Town of Newtown regarding the inadequacies of the EIE.
As a result of the February 1989 meeting, the DOC released a purported revised ROD in April 1989. CT Page 133
On or about May 17, 1989, purportedly in compliance with the CEPA statutes and regulations, the Connecticut Office of Policy and Management made a written determination that the EIE and ROD satisfied the requirements of CEPA.
The drawings for the site grading and utilities for the proposed Jail had been completed in April 1989, well prior to the approval of the EIE and the decision that the environmental impacts were reasonably acceptable.
On or about May 31, 1989, the DPW released the first of five bid packages for the construction of the Jail.
The remaining bid packages are in various stages of preparation and will be released in accordance with a "fast-track" bidding schedule established by the construction manager.
Under the Inland Wetlands and Watercourses Act, General Statutes 22a-36 through 22a-45, a permit is required from the Department of Environmental Protection (the DEP) for any proposed regulated activity conducted by any department, agency or instrumentality of the State, defined as any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution of such wetlands or watercourses.
The site grading and utilities plans and specifications included in the first bid package and made available to Newtown on or about June 6, 1989 demonstrate that the State will be conducting a number of regulated activities within the wetlands boundary. Those site grading and utilities plans and specifications show that the State proposes to create six new stormwater discharges; construct segments of a proposed loop road, a detention basin and several drainage outlet structures within or adjacent to wetlands; and install inadequate soil erosion and sedimentation controls on the site. All of these actions are regulated wetlands activities.
The State plans to construct a proposed primary access road from Nunnawauk Road to the Jail, across an unnamed stream and associated wetlands corridor by bridge.
Until the bridge is constructed, the State plans to use the existing access road from Nunnawauk Road to the Jail site. On or about June 27, 1989, the State announced at a public meeting of the State Traffic Commission (STC) that it will upgrade the wetlands crossing on the proposed construction road to support the weight of construction vehicles and equipment. CT Page 134
The defendants have failed to make application for and/or obtain a DEP permit for the above-described and other regulated activities in violation of the Inland Wetlands and Watercourses Act, 22a-36 through 22a-45 of the General Statutes. CEPA provides, in part, that:
 "Each state department . . . responsible for the recommendation or initiation of actions which may significantly affect the environment shall make a detailed written evaluation of its environmental impact . . . setting forth:
(a) a description of the proposed action;
 (b) the environmental consequences of the proposed action, including direct and indirect effects;
 (c) unavoidable adverse environmental effects and irreversible and irretrievable commitments of resources;
(d) proposed mitigation measures;
 (e) short and long term economic, social and environmental costs and benefits; and
 (f) the proposal's effect on the use and conservation of energy resources."
DEP has promulgated regulations implementing CEPA, (Regs. 22a-1a-1 — 22a-1a-12), and they provide in part that an EIE:
 "a. shall provide a full and fair discussion of environmental impacts, inform the public of reasonable alternatives and compare the impacts of the alternatives on the environment;
 b. shall not be used to rationalize or justify decisions already made;
 c. shall provide for a scoping process to identify significant issues to be analyzed in detail and;
 d. shall present an independent evaluation of the proposed action."
Pursuant to CEPA regulations, an EIE is to be prepared in accordance with certain steps as follows: CT Page 135
 "a. The sponsoring agency must conduct an early and open scoping process to identify significant issues, 22a-1a-7 (c), Conn. Agencies Regs.;
 b. Notice of the availability of an EIE must be published, the EIE must be distributed and a time period provided for comment, 22a-1a-8, Conn. Agencies Regs.;
 c. A public Record of Decision must be prepared, considering all findings of the EIE and all comments received, 22a-1a-9(b), Conn. Agencies Regs.;
 d. The Office of Policy and Management must determine the adequacy of the EIE in accordance with CEPA, 22a-1a-9-(d), Conn. Agencies Regs."
The defendants' approval of the EIE violates CEPA, General Statutes 22a-1 et seq., and the regulations promulgated thereunder, Connecticut Agencies Regulations 22a-1a-1
et seq., in that, inter alia:
 a. the draft EIE and ROD were prepared and circulated after the decision had been made to site the Jail in Newtown, after the ownership of the Newtown property had been transferred to the DOC, and after the DPW had entered into contracts for architectural and construction management services, and are an ex post facto rationalization of the decision;
 b. although the defendants held a scoping meeting and a public hearing in Newtown, the draft EIE and ROD failed to analyze a number of significant issues raised during those meetings, including but not limited to: the Route 25 Bypass and integration of the Jail EIE with the Rt. 25 EIE, Jail emergency response plan, future expansion plans for the Jail and long term impacts of DOC use of the site, aesthetic impacts of fencing and lighting, demand upon local services from visitors, change in local demographics and effects on community cohesion, soils engineering analysis, inmate labor and work release programs, safety of the elderly and high school populations, and spread of drug use and communicable diseases; c. the ROD failed to consider adequately, or at all, significant direct, indirect, short-term, long-term and/or cumulative effects of the Jail proposal CT Page 136 related to impacts on air quality, water quality, noise, water supply, flooding, sedimentation and erosion, wetlands, wastewater treatment, human health and safety, land values and traffic, as attested to in the affidavit of Michael J. Toohill. [Attached to the complaint];
 d. the draft EIE and ROD failed to independently evaluate the proposed action through the collection of field data or field analysis;
 e. the draft EIE and ROD failed to consider adequately, or at all, reasonable alternatives to the Jail proposal and the environmental consequences, including, but not limited to: i) alternative locations, including several parcels in Waterbury identified by the office of Policy and Management in the spring of 1987 which would have satisfied Executive Order 20 and ii) non-structural alternatives, including bail commission, halfway house beds, supervised home release, probation and electronic surveillance;
 f. the draft EIE and ROD did not fully and adequately consider the economic, social and environmental impacts of the Jail proposal;
 g. the Office of Policy and Management both conducted and/or supervised the initial purported site selection process and approved the EIE and ROD, despite conflict of interest.
Defendants' approval of the Jail proposal will create irreparable harm to the plaintiffs in that it:
 a. adversely affects the quality of the existing environment within the Town;
b. adversely affects property values;
 c. adversely affects the quality and quantity of existing and/or future town and residential water supplies;
 d. adversely affects the quality of air, water and noise in the Town;
 e. adversely affects flooding, sedimentation and erosion. CT Page 137
Due to the inadequacies in the EIE, the defendants' approval of the Jail is unauthorized by law, illegal, in excess of statutory authority and violative of CEPA, General Statutes 22a-1 et seq.
Plaintiffs and the environment will suffer immediate and irreparable harm if defendants are permitted to proceed with the construction of the Jail.
Plaintiffs have no adequate remedy at law.
III. Law
A. Sovereign Immunity
Plaintiffs bring this action under C.G.S. 22a-1 through 13 (the Policy Act). This proposed project — the building of the Jail — will involve regulated activities within a wetlands boundary conducted by instrumentalities of the state. Those activities will arguably damage the environment, and thus all the required statutory steps must be taken. C.G.S. 22a-1 through 13. It is alleged they have not been taken. The plaintiffs follow those allegations by complaining that the defendants have acted in excess of their statutory authority by failing to fulfill those requirements. The doctrine of sovereign immunity does not Protect against such conduct. Doe v. Heintz, 204 Conn. 17, 31.
B. Venue
The issue of venue is moot as the case was transferred to the Hartford-New Britain judicial district. C.G.S. 22a-16.
C. Procedure Required
The first two claims for relief seek "A judgment declaring that . . .". The third and fourth claims seek injunctive relief.
The court reads those first two claims for relief as requesting a declaratory judgment.
Under C.G.S. 52-29 (a) this court "may declare rights and other legal relationships on request for such a declaration, whether or not further relief is or could be claimed."
In the first claim for relief plaintiffs seek a declaratory judgment "that the State's plans to construct CT Page 138 the Jail [with certain alleged deficits] is [sic] in violation of . . . Conn. Gen. Stat. 22a-36 through 22a-45
and the regulations promulgated thereunder;". Under C.G.S. 4-176 (a) "[a]ny person may petition an agency . . . for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstance of a provision of the general statutes, [or] a regulation . . . on a matter within the jurisdiction of the agency." 22a-36 through22a-45 of the C.G.S. are within the jurisdiction of the DEP. As to whether or not the State's plans are in violation of those sections under the specified circumstances is a question that DEP may be asked to answer by rendering a declaratory ruling. Plaintiffs have not done that. After plaintiffs have done that and DEP "does not take an action required by subdivision (1), (2) or (3) of subsection (e) of section 4-176" or it will not issue a ruling, then plaintiff "may seek in the superior court a declaratory judgment." C.G.S. 4-175(a).
At least some cases indicate that this court may have subject matter jurisdiction over an action even if the plaintiffs have failed to exhaust their administrative remedies. England v. Coventry, 183 Conn. 362, 364; Connecticut Life 
Health Ins. Guaranty Assn. v. Jackson, 173 Conn. 352.
This court does not have jurisdiction of the subject matter of an action where the plaintiffs have failed to exhaust their administrative remedies, and those remedies are adequate. Connecticut Mobile Home Assn., Inc. v. Jensen, 178 Conn. 586,588-589. C.G.S. 4-175. This court believes that the plaintiffs' remedies before DEP are adequate.[1]
Regardless of that adequacy, under our Practice Book 390(e) this court "will not render [a] declaratory [judgment] where the court shall be of the opinion that the parties should be left to seek redress by some other form of procedure." This court unequivocally is of the opinion that plaintiffs should pursue a ruling from DEP before coming to this court.
D. P.B. 390(d)
Our practice book 390(d) requires that "all persons having an interest in the subject matter of the complaint" be made parties to an action for a declaratory judgment or at least have reasonable notice of the action. From this defendants argue that the Commissioner of Correction, all the other towns where a jail might be built and certain other persons should be joined in or given notice of this action. In spite of plaintiffs' second claim for relief this is not a "siting" case but an environmental one. (See Westport v. State, 204 Conn. 212). Those other towns do not have "an interest" in this particular CT Page 139 environmental question.[2]
The Commissioner of Correction has had reasonable notice of this action. P.B. 390(d).
Motion to dismiss is granted.
N. O'Neill, J.