[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTIONS TO DISMISS
CT Page 9723
The above two cases were consolidated because the two actions involve the same defendant and arise from the same set of facts, and, upon the agreement of the parties, the motion to consolidate was granted on or about January 22, 2002.
These two cases are unusual. They involve claims of sovereign immunityin which two Connecticut State Troopers have sued another State Trooperfor injuries suffered in the same incident.
These causes of action arise from the shooting of the plaintiff James Reidy (hereinafter "Reidy") and the plaintiff Mark J. Pelletier (hereinafter "Pelletier"), while on duty as Connecticut state troopers in Willington, Connecticut on or about September 3, 1998. Pelletier and State Trooper Trainee Hoague were assigned to respond to a vandalism complaint at Edward Premo's house on River Road (Route 32) in Willington, Connecticut. The complainants shared a common driveway with their neighbor, Edward Premo. It appeared that their car had been struck by Premo's van. When Trainee Hoague, after conversations with Edward Premo, advised Premo that he was under arrest for evading responsibility and instructing him to put his arms behind his back, Premo pulled a pistol from his back and opened fire on both troopers. Trooper Pelletier was hit in his left hand, hip and foot. Hoague was hit in the arm. Shortly thereafter, Reidy was directed to the scene to assist. Before Reidy could exit his vehicle, Premo shot him several times as a result of which Reidy suffered serious and permanent injuries.
The gravamen of the plaintiffs' complaints is that Hernandez had gone to the Premo property in Willington on June 24, 1998 and was aware of the violent tendencies and weapons cache that Edward Premo had and that he was a danger to society and specifically to state troopers such as Reidy and Pelletier yet Hernandez violated State Police regulations and deliberately failed to inform anyone of this information. If armed with the information that Hernandez had, Pelletier and Reidy would have approached the premises in a much different manner and would have not sustained the injuries they did as a result of Edward Premo's shooting at them.
Based upon the allegations in the complaints and the facts set forth therein, this Court makes the following findings:
1. On June 24, 1998 Hernandez was approached in his resident trooper's office in Stafford by Randy Premo seeking assistance in removing his personal belongings from the residence of his brother, Edward, where he CT Page 9724 lived. Randy Premo also told Hernandez that his brother, Edward, had used a gun and threatened to kill him, and that he was afraid for his safety. During his encounter with Randy Premo, Hernandez was provided with the following, first-hand information about Edward Premo:
a. That he had threatened to kill his brother if he did not leave the premises;
b. When he threatened to kill his brother, he displayed a gun;
c. When he threatened his brother with a gun, he did not appear to know who his brother was and thought he was an intruder;
d. That he was paranoid and delusional;
e. That he owned fully automatic weapons and kept them in his van on his property;
f. That he possessed illegal explosives in his home;
g. That he had booby-trapped his bedroom door with explosives in order to protect himself from government agents.
h. That he thought the CIA was out to get him;
i. That he ordered and read handbooks on explosives;
j. That he had ordered surveillance-type equipment to watch law enforcement personnel;
k. That he had placed tin foil all over the windows of his trailer residence to prevent the government from observing his activities;
l. That his sister had been trying to get help for Edward Premo but had been unsuccessful;
m. That his brother's behavior had grown increasingly worse in recent months, to the point where he could not longer reside with him in safety; and
n. That he was worried about his brother's safety, his own safety, and the safety of others as a result of his brother's dangerous paranoid and delusional behavior.
Edward Premo was not at home at the time of the visit to his home by Hernandez and Randy Premo. After helping Randy move, Hernandez contacted CT Page 9725 Edward Premo's sister who corroborated the information that Hernandez had received from Randy, advising him that her brother Edward was mentally ill, and that he needed help.
Although Hernandez had probable cause to arrest Edward Premo for threatening his brother, had a duty under the domestic violence laws to arrest Edward Premo and certainly had enough information to apply for a search warrant of Edward Premo's premises, instead, Hernandez took no further action upon the information he had received from Randy Premo and his sister.
Further, in subsequent days but prior to September 3, 1998, Hernandez learned that Edward Premo had an extreme hatred for the State Police and felt harassed by the State Police. Hernandez thus knew that it was highly likely that Edward Premo would react violently to any encounter with any member of the State Police, such as an attempt by a state trooper to question Edward Premo about a crime or to arrest Edward Premo.
State Police Regulations, Practice and Procedure provide several means for troopers to record and report events so that their fellow troopers will be properly advised of circumstances in the field affecting their safety and the public safety. These means include dispatch cards, written reports and written entries in daily logs and incident logs kept and maintained in both the office of the resident state trooper and in the police barracks. The regulations require troopers to record all official activity on a dispatch card.
On June 24, 1998, Hernandez failed to report or record on a dispatch card any of the information that he had received from Randy Premo. Instead, he told a State Police dispatcher to use a code reference on the dispatch card corresponding to a category of events under the heading of "Public Relations" and to use a subcode reference for the designation "Assist Citizen". Thus, the code references and categories designated by Hernandez failed to alert troopers of the danger to them in the field, and were false and misleading. By intentionally providing misleading information for use on the dispatch card to hide his own malfeasance and fraudulently concealing what had really occurred, Hernandez recklessly, wantonly and willfully exposed his fellow troopers, including the plaintiff, to serious danger.
Hernandez also failed to report the incident and failed to arrest Edward Premo under the provisions of CGS § 46B-38d(a) and 64B-38b which was to make a report and then arrest Edward Premo under the Family Violence Law. Hernandez deliberately failed to create any written record whatsoever of his encounter with Randy Premo and recklessly, wantonly, and willfully prevented other troopers, including the Plaintiff, from CT Page 9726 ever learning what he knew about Edward Premo, including the fact that he posed an immediate and serious threat to their safety. Hernandez deliberately and intentionally failed to notify his superior officers of the information he had received from Randy Premo and deliberately failed to request or obtain guidance and instruction regarding future action.
From June 24, 1998 through September 2, 1998, Hernandez continuously and deliberately ignored State Police regulations and state law for his own self-serving ulterior purpose of hiding his initial wrongful and illegal conduct of June 24, 1998, with consciousness that is a direct violation of state law and State Police Regulations and Procedures, creating a grave and substantial risk of imminent serious injury to his fellow troopers such as the plaintiff.
The Complaint further alleges that all of these actions or lack of action by Hernandez were in excess of his authority under law, were outside the scope and performance of his duties, were reckless, wanton and willful, and were performed with consciousness that his acts created a substantial risk of serious injury or death to plaintiff and other state troopers.
 ISSUES
The Court will now address the issues or claims on which the defendant's motions to dismiss are based.
1. Defendant claims that these actions are brought against the defendant in his official capacity, and, therefore, he is entitled to sovereign immunity. Plaintiffs, in contrast, claim that the suits have been brought against the defendant in his individual capacity. A review of the Reidy complaint dated June 22, 2001 indicates that the plaintiffs are correct in their claim that the suits against the defendant have been brought against him in his individual capacity. Kentucky v. Graham,473 U.S. 159 (1985). Paragraph 1 of Count One of the complaint states in pertinent part that ". . . The defendant . . . was acting under color of law as a Connecticut state trooper. . . ." In a suit where a complaint alleges tortuous conduct of an individual acting under color of state law, individual capacity plainly lies even if the plaintiff has failed to spell out defendant's capacity in the complaint. Hill v. Shelinder, United States Court of Appeals, Seventh Circuit, (1991). Further, in paragraph 29 of the complaint it is alleged that the actions and inactions of the defendant ". . . were in excess of his authority under law, were outsidethe scope and performance of his duties, were reckless, wanton and willful, and were performed with consciousness that his acts created a substantial risk of serious injury or death to plaintiff and other state troopers." (Emphasis added). Also, it should be noted that no allegation CT Page 9727 has been made that the defendant acted in his official capacity, and, of course, the State of Connecticut was not made a defendant in these actions. Accordingly, this Court concludes that the defendant was sued in both cases in his individual capacity. Therefore, the defendant is not entitled to general or constitutional sovereign immunity.
2. Defendant claims he is immune under CGS § 4-165. However, a reading of said section and a review of the holding in Shay v. Rossi,253 Conn. 134 (2000), the allegations and supporting facts of Reidys' complaint are sufficient to establish that the defendant had acted with improper and self-serving motive in his actions which can easily be construed as being wanton, reckless or malicious, and, therefore, the defendant's conduct falls within the exception to statutory immunity for conduct that is wanton, reckless or malicious. Further, to take advantage of CGS § 4-165 the defendant's actions would have to be within the scope of his employment, and it is clearly alleged in paragraph 29 of the Reidy complaint that his actions were outside the scope of his employment.
3. The defendant claims that the plaintiffs failed to exhaust their administrative remedies by not going first to the State Claims Commissioner. However, McKinley v. Musshorn, 185 Conn. 616, 621 (1981) states, inter-alia: "An individual having a liability claim for which astate employee is immune pursuant to General Statutes § 4-165 may present it as a claim against the state to the claims commissioner." (Emphasis added). Clearly, based upon the above findings, the defendant is not immune. Additionally, the plaintiffs did make a claim to the claims commissioner, and the claims commissioner dismissed their claim because the plaintiffs have alleged conduct that would not be protected by sovereign immunity. Accordingly, this Court concludes that the plaintiffs were not required to make a claim to the claims commissioner, and even if they were, such claims were made and dismissed. The defendant's claim that the plaintiffs failed to exhaust their administrative remedies is invalid.[1]
 4. Defendant claims that the plaintiffs' claims are barred by the exclusivity provisions of the Workers' Compensation Act. McKinley v.Musshorn, supra, states in pertinent part: "An employee who has a right to benefits under the Worker's Compensation Act is barred from pursuing an action against his employer for damages for personal injuries. Whether the right to workers' compensation also bars an action against a fellow employee for damages for personal injuries is a question of law. **citations omitted.** General Statutes § 31-293a provides in part that if an employee has a right to workers' compensation benefits "on account of injury or death from injury caused by the negligence or wrongof a fellow employee, such right shall be the exclusive remedy of such CT Page 9728 injured employee . . . and no action may be brought against such fellow employee except for negligence in the operation of a motor vehicle . . . or unless such wrong was willful or malicious." (Emphasis added). The Reidy complaint alleges, in paragraph 23 that the defendant's conduct was reckless, wanton and willful (emphasis added); in paragraph 26 that the defendant "intentionally, recklessly, wantonly and willfully . . ."; paragraph 27 claims that the defendant's actions were knowing, reckless, wanton and willful; and paragraph 29 describes his actions as reckless, wanton and willful. The facts alleged constitute willful misconduct. Accordingly, the plaintiffs are exempt from the exclusivity provisions of the Workers' Compensation Act. Shay v. Rossi, supra, treats the words "willful" and "malicious" as having the same meaning. Id. 181, 182.
5. Defendant claims that the Eleventh Amendment to the United States Constitution bars the instant suits. However, at oral argument, the parties agreed that if the defendant is being sued in his individual capacity, there is no violation of the Eleventh Amendment.
6. Defendant claims the plaintiffs much allege affirmative wrongful action rather than inaction. There are specific allegations which allege affirmative wrongful action, and the holding in Shay v. Rossi, supra, is that wrongful inaction would still be willful, wanton and/or reckless.
7. Finally, defendant claims that the plaintiffs can maintain suits against state employees only in seeking declaratory or injunctive relief. However, a review by this Court of caselaw, specifically Doe v.Heintz, 204 Conn. 17 (1987) leads the court to conclude that monetary relief is not barred in a claim against a state employee in his individual capacity who is not immune from suit because of sovereign immunity. Accordingly, there is authority for these suits claiming money damages.[2]
The Court has referred to the Reidy complaint throughout this memorandum. The complaint by the plaintiffs, Mark and Stephanie Pelletier are sufficiently similar in nature to those in the consolidated case of James and Gina Reidy for the Court to reach the same conclusions.
The motions to dismiss in both cases are denied.
Rittenband, JTR